# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION AT COOKEVILLE

| | | |
|---|---|---|
| B.A.P., a minor child by and through<br>her parent, RICHARD PENKOSKI;<br>and RICHARD PENKOSKI, as the<br>parent and legal guardian of B.A.P., | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Case No. 2:20-cv-00065** |
| OVERTON COUNTY BOARD OF<br>EDUCATION, RICHARD MELTON,<br>and STEPHEN HENSON, | ) ) ) ) | **Chief Judge Waverly D. Crenshaw, Jr.**<br>**Magistrate Judge Alistair E. Newbern** |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF INDIVIDUAL DEFENDANTS RICHARD MELTON AND STEPHEN HENSON

**NOW COME** the individually named Defendants, Richard Melton and Stephen Henson, by and through counsel, and, in support of their Motion to Dismiss, would show this Court that Plaintiffs' Amended Complaint fails to state a claim for relief against them in their individual capacities. Accordingly, these individual Defendants should be dismissed from this matter pursuant to *Fed. R. Civ. P.* 12(b)(6). Alternatively, even if the allegations against these Defendants do state claims for relief, these Defendants are entitled to qualified immunity since the Amended Complaint does not alleged facts that would lead this Court to find that they are among "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

**STATEMENT OF THE CASE**

Plaintiffs filed their initial Complaint on October 16, 2020, alleging claims against the Overton County Board of Education. (Doc. No. 1). On May 19, 2021, Plaintiffs moved to amend their Complaint to add Mr. Melton and Mr. Henson as individually named defendants. (Doc. No. 26). The Court granted this Motion on October 5, 2021. (Doc. No. 42). In Plaintiffs' Amended Complaint, they seek "injunctive relief, declaratory relief, and damages" from Mr. Melton and Mr. Henson for alleged violations of Plaintiffs' constitutional rights. (Doc. No. 43 at ¶¶ 15, 16).

The facts giving rise to Plaintiffs' Amended Complaint allegedly occurred on August 25, 2020 at Livingston Academy, a school operated by Defendant Overton County Board of Education. (Doc. No. 43 at pp. 16-20). Plaintiffs assert that, "at all material times," Mr. Melton and Mr. Henson were operating as employees of the Overton County Board of Education. (*Id.* at ¶¶ 15, 16). Specifically, Plaintiffs assert that Mr. Henson, a teacher, violated the minor Plaintiff's constitutional rights under the First, Fifth, and Fourteenth amendment by allegedly telling her to leave class and report to the principal's office. (*Id.* at ¶ 68). Plaintiffs assert that Mr. Melton, school principal, violated the minor Plaintiff's constitutional rights under the First, Fifth, and Fourteenth amendment by allegedly telling her to either cover up or change out of a shirt due to it being "sexually connotative" in violation of the school dress code. (*Id.* at ¶¶ 73, 75, 77). Mr. Melton allegedly further stated that the minor Plaintiff would need to go home if she did not change clothes. (*Id.* at ¶ 93).

## APPLICABLE LAW

### I.    Grounds for Dismissal

*Fed. R. Civ. P.* 12(b)(6) provides that a district court shall dismiss a plaintiff's complaint when it fails to state a claim upon which relief can be granted. While the Federal Rules of Civil Procedure do not require detailed factual allegations, they nevertheless demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. While a district court must accept all factual allegations as true, the same deference does not apply to legal conclusions. *Iqbal*, 556 US at 678. "[A] legal conclusion couched as a factual allegation" is not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Furthermore, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (cleaned up).

## II.    <u>Qualified Immunity</u>

Generally, "government officials are entitled to some form of immunity from suits for damages." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Officials who "perform[] discretionary functions" receive qualified immunity, which shields them "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818 (cleaned up). It also shields them from incurring the costs, risks, and distractions associated with trial and avoids the consequence of deterring "able people from public service." *Id*. at 816-18. Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Plaintiffs bear the burden of overcoming a claim of qualified immunity. *See, Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)(overruled on other grounds by *Pearson*). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id*.

A claim of qualified immunity is typically examined in two steps: "[f]irst, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, 'show the offic[ial's] conduct violated a constitutional right,'" and, if so, "the court must then decide 'whether the right was clearly established.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (cleaned up). "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

4

reasonable offic[ial] that his conduct was unlawful in the situation that he confronted." *Id.* (cleaned up).

**ARGUMENT**

**I.**      **All Claims Against Stephen Henson Should be Dismissed**

     **A. Plaintiffs' Complaint Does Not State a Claim Upon Which Relief Can be Granted Against Stephen Henson**

Plaintiffs do not assert actionable claims against Mr. Henson. In their Amended Complaint, Plaintiffs claim that, on August 25, 2020, 1) the minor Plaintiff was wearing a shirt displaying the message "Homosexuality is a sin" accompanied by a citation to the Bible; 2) A "pro-homosexual symbol" was on display in Mr. Henson's classroom; 3) and Mr. Henson stated that the minor Plaintiff was required to leave class and report to the principal's office. (Doc. No. 43 at ¶¶ 63, 64, 68).

Other than asserting that these events occurred on August 25, 2020, Plaintiffs make no connection between these allegations. Plaintiffs do not explain what relationship, if any, exists between these alleged facts or explain how they collectively amount to a violation of the Plaintiffs' constitutional rights. Plaintiffs have merely asserted that, on August 25, 2020, Mr. Henson sent the minor Plaintiff to the principal's office for some reason while she was wearing the shirt referenced in the Amended Complaint. Plaintiffs do not assert that Mr. Henson explicitly said or did anything in direct response to the content of minor Plaintiff's shirt or that he ever referenced any school system policies or the dress code. They also do not allege that Mr. Henson referenced, referred to, or relied upon the alleged

5

"pro-homosexual symbol" that was on display in his classroom in any alleged interactions with the minor Plaintiff.

In Paragraphs 16 and 59 of the Amended Complaint, Plaintiffs do assert that Mr. Henson demanded that the minor Plaintiff not wear the shirt. It is notable, however, that this allegation is missing from the Plaintiffs' description of what happened in the classroom. These two paragraphs, therefore, are either "naked assertion[s]" devoid of "further factual enhancement" like those dismissed in *Twombly,* 550 U.S. at 557, or conclusory assumptions like those rejected in *Iqbal*, 556 U.S. at 678, that speculate upon Mr. Henson's motive for sending the minor Plaintiff to the office. Notably, Plaintiffs do not allege that Mr. Henson had any authority other than to send the minor Plaintiff to the office, and they do not allege that he infringed upon her rights in any other way.

In fact, teachers regularly send students to the principal's office for varying, legitimate reasons, none of which amount to violations of constitutional rights. These allegations are, indeed, threadbare and do not state a claim upon which relief can be granted against Mr. Henson. They do not enable this Court to draw a reasonable inference that Mr. Henson has discriminated against Plaintiffs or otherwise violated their constitutional rights. It is far more plausible that Mr. Henson was unmindful of whatever message the minor Plaintiff was attempting to convey and was, instead, simply enforcing the facially neutral dress code Plaintiffs reference in their Amended Complaint. (Doc. No. 43 at ¶ 49).

Plaintiffs have attempted to cast the minor Plaintiff's shirt as a rebuttal to what they have mistakenly called a "pro-homosexual symbol" in Mr. Henson' classroom. This "symbol," which is Exhibit 1 to the Amended Complaint, does not reference homosexuality

6

at all, and Plaintiffs do not explain in their Amended Complaint why they have concluded that Exhibit 1 is a "pro-homosexual symbol." (Doc. No. 43-1). While Exhibit 1 does include the web address for True Colors Fund, it does not contain the quote Plaintiffs have excerpted from the Fund's website. (Doc. No. 43 at ¶ 67).[1] Even if the poster did include that quote, Plaintiffs have not explained how that quote objectively amounts to a "pro-homosexual symbol" that violated, or contributed to violating, Plaintiffs' constitutional rights. Plaintiffs have made a bald assertion, unsupported by any facts, that Exhibit 1 amounts to a "pro-homosexual symbol," but, even if it were, that fact would not support the conclusion that Mr. Henson violated Plaintiffs' rights.

Indeed, it is far more plausible that the poster merely advertised the Board of Education's commitment to offer students a safe, welcoming environment consistent with Tennessee law and Board Policy No. 6.304, which Plaintiffs also reference in Paragraphs 37-41 of their Amended Complaint. Exhibit 1 contains the following words, "Diverse, Inclusive, Accepting, Welcome, Safe Space for Everyone." (Doc. No. 43-1). These words demonstrate a message of unconditional acceptance and inclusion. This message is squarely in keeping with public school systems' obligation under state law to maintain a "safe and civil environment" and to ensure that harassment, intimidation, and bullying are not permitted. *Tenn. Code Ann.* § 49-6-4501(1)(2). This message also corresponds with Overton County Board Policy No. 6.304, which states, "a safe, civil, and supportive environment in school is necessary for students to learn and achieve high academic

---

[1] As of the date of the filing of this Memorandum, the web address on Exhibit 1 appears to be outdated. The current web address appears to be https://truecolorsunited.org.

standards." The message included in Exhibit 1 is in furtherance of the school system's obligations under the law and policy of ensuring all students feel safe and supported.

Plaintiffs' allegations against Mr. Henson require this Court draw an inference upon an inference to determine whether and how Mr. Henson allegedly violated Plaintiffs' constitutional rights. If their position is that Mr. Henson's poster is evidence of discriminatory animus against the Plaintiffs, that is sheer speculation unsupported by any facts. Speculation does not meet the pleading threshold set forth in *Twombly* and *Iqbal*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Since this conjecture falls far short of the *Twombly* and *Iqbal* standards, all claims against Mr. Henson should be dismissed.

### B. Stephen Henson is Entitled to Qualified Immunity

Even assuming, *arguendo*, that Plaintiffs' Amended Complaint did give rise to a claim that Mr. Henson violated Plaintiffs' constitutional rights, Mr. Henson is still entitled to qualified immunity because Plaintiffs have not demonstrated that he violated any right that was clearly established on August 25, 2020.

In order to assert a violation of a "clearly established" constitutional right to defeat a qualified immunity defense, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[I]n light of the pre-existing law the unlawfulness must be apparent." *Id*. Courts utilize an "objective reasonableness" standard to determine

8

whether an official would believe that a right is clearly established. *Sandul v. Larion*, 119 F.3d 1250, 1254 (6th Cir. 1997)(cleaned up). This test "focuses on whether an official, given the facts that the official knew or reasonably should have known about the situation, should have known that his…particular conduct would not pass scrutiny when applied to the law." *Id*.

There is no clearly established Sixth Circuit precedent that would have alerted Mr. Henson that he could not have sent a student to the office for her having violated a facially neutral dress code, particularly when the offending article of clothing implicated the Board's policy against discrimination, harassment, and bullying. "First Amendment standards applicable to student speech in public school…are unique, and courts accord more weight in the school setting to the educational authority of the school in attending to all students' psychological and developmental needs." *Barr v. Lafon*, 538 F.3d 554, 567-68 (6th Cir. 2008).

The Sixth Circuit has explicitly recognized the authority of schools to impose facially neutral dress codes on their students. In *Blau v. Fort Thomas Public School Dist.*, 401 F.3d 381 (6th Cir. 2005), the Sixth Circuit Court of Appeals upheld a dress code that prohibited, among other things, "[c]lothing that promotes drugs, alcohol, tobacco, sex, or is offensive or degrading." *Id*. at 387. The court noted that "in the First Amendment arena and other arenas as well, the Supreme Court...has frequently emphasized that public schools have considerable latitude in fashioning rules that further their educational mission and in developing a reasonable fit between the ends and means of their policies." *Id*. at 393 (referencing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988)).

9

The dress code at issue in this case prohibits clothing with sexual connotations. Given that students are, by definition, juvenile, and further given that many of them are preoccupied with their developing understanding of sex, school officials across the country rationally prohibit clothing that classmates might find titillating, amusing, or distracting for whatever reason. Mr. Henson had no reason to suspect that enforcing an otherwise neutral prohibition would violate anyone's constitutional rights.

Plaintiffs' Amended Complaint cites examples of other students whose actions purportedly violate the dress code but who were treated differently. None of these examples, however, justify keeping Mr. Henson in this lawsuit. With regard to the other students who wore clothing that supposedly had sexual connotations, there is no allegation that Mr. Henson was aware of these students. With regard to the student who supposedly stated, in the presence of Mr. Henson, that two other students had been having sex, that is not a dress code issue. Plaintiffs surely do not contend that the dress code, to be applied fairly, should prohibit the use of the spoken word "sex," whether uttered in biology class, English grammar classes, or on the playground.

Beyond the obvious desire to maintain good order and discipline within the school, the Sixth Circuit has also recognized that a school may circumscribe a speaker's rights where they "colli[de] with the rights of other students to be secure and let alone." *Barr*, 538 F.3d at 568 (citing *Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 508 (1969)). Plaintiffs necessarily acknowledge this consideration by referencing Board Policy No. 6.304, the policy that prohibits discrimination, harassment, and bullying. (Doc. No. 43 at ¶¶ 37-41).

This policy, which the Board adopted in compliance with *Tenn. Code Ann.* § 49-6-4503, has the stated purpose of providing students with "a safe, civil, and supportive environment." This policy, in material part, defines bullying, intimidation, and harassment as "an act that substantially interferes with a student's educational benefits, opportunities, or performance, and the act has the effect of…causing emotional distress to a student or students; or creating a hostile educational environment." Significantly, the underlying statute requires school officials to adopt "a procedure for discouraging and reporting conduct aimed at defining a student in a sexual manner or conduct impugning the character of a student based on allegations of sexual promiscuity..." *Tenn. Code Ann.* § 49-6-4503(b)(13).

There is very little more personal to an adolescent than his or her sexuality. For many students, whether because they matured earlier or later than their peers, or because they are sexually active or chaste, or because they are uncertain of their orientation or identity, their sexuality may be a source of embarrassment. For others, these same vulnerabilities may be fodder for bullying, intimidation, and harassment. The General Assembly has made it a legislative priority for schools to prevent bullying, harassment, and intimidation in the public schools of this state based on several protected categories including sex. Tennessee's public policy is consistent with the same emphasis the federal government has placed on eliminating sex-based discrimination and harassment by way of Title IX. *See, Davis v. Monroe County Bd. of Educ.,* 526 US 629 (1999). A facially neutral dress code policy that makes sex-based topics off-limits is entirely consistent with the Sixth Circuit's recognition that schools must protect students whose right "to be secure and let

11

alone" would otherwise be impaired by a message that would create a hostile educational environment. *Barr*, 538 F.3d at 568

In this same vein, the Sixth Circuit has recognized that schools may prohibit speech that is "inconsistent with and counter-productive to education." *Boroff v. Van Wert City Bd. of Educ.*, 220 F.3d 465 (6th Cir. 2000). In *Boroff*, the Court of Appeals considered whether the school had violated a student's right by prohibiting him from wearing Marilyn Manson t-shirts to school. In affirming the school's decision to prohibit the shirt, the court strayed from the strict application of *Tinker* and borrowed heavily from both *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675 (1986), and *Hazelwood*. In particular, the court held

> the School did not act in a manifestly unreasonable manner in prohibiting the Marilyn Manson T-shirts pursuant to its dress code. The Supreme Court has held that the school board has the authority to determine "what manner of speech in the classroom or in school is inappropriate." *Fraser*, 478 U.S. at 683. The Court has determined that "[a] school need not tolerate student speech that is inconsistent with its 'basic educational mission . . . even though the government could not censor similar speech outside the school.'" *Kuhlmeier,* 484 U.S. at 266 (quoting *Fraser*, 478 U.S. at 685). In this case, where Boroff's T-shirts contain symbols and words that promote values that are so patently contrary to the school's educational mission, the School has the authority, under the circumstances of this case, to prohibit those T-shirts.

*Id.* at 470.

In view of *Boroff*, Mr. Henson would have had no reason to believe that a facially neutral dress code policy that simply prohibits clothing with sexual connotations violated Plaintiffs' constitutional rights. If Mr. Henson had given any thought whatsoever to the message on the minor Plaintiff's shirt, which is not alleged in the Amended Complaint, he

certainly would have viewed it through the lens of the school's duty to provide a secure learning environment for all students. There is no reason he would have thought that sending the minor Plaintiff to the office would have been a constitutional violation.[2]

In response, Plaintiffs would rely on the Supreme Court's decision in *Tinker* and this Court's recent decision in *Young v. Giles Cnty. Bd. of Educ.,* 181 F.Supp.3d 459 (M.D. Tenn. 2015). Neither case is applicable to the case at bar, however, inasmuch as the school districts in those cases specifically targeted the plaintiffs' messages rather than relying upon a previously adopted, facially neutral dress code.

In *Tinker*, the Supreme Court found that the school district had adopted a policy prohibiting armbands "based upon an urgent wish to avoid the controversy which might result from the expression…of opposition to this Nation's part in the conflagration in Vietnam." 393 U.S. at 510. The policy at issue in *Tinker* was adopted with the intention of banning the precise speech the plaintiffs in that case later exhibited; the school system explicitly exhibited viewpoint discrimination.

In contrast, Livingston Academy's dress code was not adopted based on any wish to quash religious viewpoints or anti-homosexual speech, and the Amended Complaint contains no allegation that would support such a claim. As Plaintiffs note, the school system's dress code policy has been in place for several years, and the Livingston Academy dress code in the 2020-21 handbook sets forth general parameters for good dress and

---

[2] With regard to Plaintiff Richard Penkoski, Plaintiffs have not alleged that Mr. Henson had any interaction with Mr. Penkoski that could arguably amount to a violation of any of his constitutional rights.

certain general categories of dress that are prohibited without any specific reference to the viewpoints espoused by Plaintiffs. (Doc. No. 43 at ¶¶ 42, 49).

*Young* is also inapplicable. In that case, a school official explicitly told a student she could not wear a shirt "referencing LGBT rights." 181 F.Supp.3d at 462. Her shirt allegedly said, "some people are gay, get over it." *Id*. at 461. Although another school official later tried to tie this prohibition to the school dress code by saying that "pro-LGBT messages are sexual in nature," the initial comment made to this student was that LGBT messages were banned. The *ex post facto* explanation could not change the fact that this prohibition had first been couched as viewpoint discrimination.

Here, there is no allegation in the Amended Complaint that Mr. Henson told the minor Plaintiff that she could not wear the shirt at issue because it contained a message about homosexuality. Rather, the shirt was unacceptable because it contained something inarguably and plainly listed as prohibited in the dress code. (Doc. No. 43 at ¶¶ 49, 73).

Plaintiffs have not established that Mr. Henson exhibited any behavior that violated Plaintiffs' constitutional rights or that he was aware or reasonably should have been aware that his actions on August 25, 2020 in enforcing school policy would amount to a constitutional violation. To the contrary, Sixth Circuit precedent would have guided him to do exactly what he is accused of having done – sent the student to the office for the administration to address a possible dress code violation.

## II.   All Claims Against Richard Melton Should Be Dismissed

### A. Plaintiffs' Amended Complaint Does Not State a Claim Upon Which Relief Can be Granted Against Richard Melton

#### 1. The Amended Complaint Does Not Allege Facts Supporting Claims of Failure to Train and Supervise

As part of their allegations against Defendant Richard Melton, Plaintiffs assert that he "failed to…adequately train" employees regarding Livingston Academy's student handbook. (Doc. No. 43 at ¶¶ 8 to 10). They further allege Mr. Melton failed to sufficiently supervise other employees to prevent unspecified constitutional violations. (*Id.* at ¶¶ 132-133).

However, Plaintiffs do not offer any facts to support these allegations. There is nothing in the Amended Complaint that explains precisely when or how Mr. Melton failed to train or supervise employees, which employees he failed to train or supervise, or how the allegedly inadequate training or supervision caused harm to Plaintiffs. In fact, the Plaintiffs assert that it was Mr. Melton who gave the Plaintiffs the choice of covering the minor Plaintiff's shirt or going home. (Doc. No. 43 at ¶¶ 78, 80, 97). Since Mr. Melton was the decisionmaker, Plaintiffs do not assert any plausible claim that this alleged lack of training or supervision resulted in any injury whatsoever.

Plaintiffs have not set forth a sufficient claim that would allow this Court to infer that Mr. Melton failed to adequately train or supervise anyone about anything or that Plaintiffs are entitled to relief as a result. Plaintiffs have only asserted legal conclusions cloaked as factual allegations, which is insufficient to show a claim upon which relief can be granted. *Twombly*, 550 U.S. at 555.

15

### 2. The Amended Complaint Does Not Alleged Facts Supporting a Claim of an Unconstitutionally Vague Handbook

While Plaintiffs assert that Mr. Melton drafted and approved of the enforcement of the student handbook at issue, they do not offer any facts explaining how these acts actually impacted Plaintiffs' constitutional rights. To the contrary, the Plaintiffs evidently believe that the dress code would permit the t-shirt but for what they contend to be impermissible viewpoint discrimination. Thus, the handbook claim, too, fails to meet the *Iqbal* standard as it amounts to another conclusory allegation.

### 3. The Amended Complaint Does Not Allege Facts Supporting a Claim of Viewpoint Discrimination

Plaintiffs make the conclusory allegation that Mr. Melton removed the minor Plaintiff from class and ordered her to change her shirt in violation of her constitutional rights of free speech and the free exercise of her religion. In the same breath, however, the Amended Complaint itself offers a more plausible, legitimate basis for what Mr. Melton did: the minor Plaintiff's shirt was in violation of the dress code. It contained a sexual connotation, which is prohibited. (Doc. No. 43 at ¶¶ 49, 88, 89). Because it was prohibited, the minor Plaintiff could not return to class until she covered up the prohibited language or changed her clothes. (*Id*. at ¶¶ 78, 80). Instead of changing or covering her shirt so that she would be complying with the dress code, Plaintiffs decided to remove the minor Plaintiff from school. (*Id*. at ¶ 97).

Plaintiffs do not represent that Mr. Melton ever referenced the minor Plaintiff's religion or religious viewpoint at any point on August 25, 2020, nor do they assert that Mr. Melton knowingly permitted another student with a different viewpoint to wear apparel

that violated the dress code. They further make no allegation that Mr. Melton prevented the minor Plaintiff from expressing a religious viewpoint in a manner that did not violate the dress code. As principal of the school, Mr. Melton has a responsibility to try to ensure that all students follow the dress code and to take appropriate action when a student is found to be in violation.

In *Iqbal*, the plaintiff alleged that federal officials had adopted a policy of unconstitutional detention based on various protected categories. The Supreme Court held that those conclusory allegations of intent "without reference to its factual context" were insufficient. 556 U.S. at 686. The same is true with regard to the allegations against Mr. Melton. Plaintiffs have not offered a plausible claim, supported by facts, that Mr. Melton was motivated to violate Plaintiffs' constitutional rights on the basis of any particular viewpoint. "The allegation of…viewpoint discrimination…without any factual content to bolster it, is just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate, and thus does nothing to enhance the plausibility of Plaintiffs' viewpoint discrimination claim." *Ctr. For Bio-Ethical Reform Inc. v. Napolitano*, 648 F.3d 365, 378 (6th Cir. 2011)(cleaned up).

The facts in the Amended Complaint outline that Mr. Melton had a legitimate reason for addressing the minor Plaintiff's shirt: it was a dress code violation. There is no

representation that he made any reference to the minor Plaintiff's religious viewpoint or that he considered it a relevant factor.[3]

**B. Richard Melton is Entitled to Qualified Immunity**

Assuming *arguendo* that Plaintiffs' Amended Complaint did give rise to a claim that Mr. Melton violated Plaintiffs' constitutional rights, Mr. Melton is still entitled to qualified immunity for the same reasons Mr. Henson is, *i.e.*, Plaintiffs have not demonstrated that Mr. Melton violated any right that was clearly established on August 25, 2020.

Like Mr. Henson, Mr. Melton would have had no reason to believe that a facially neutral dress code would violate a student's constitutional rights. Indeed, as the Sixth Circuit noted in *Blau*, they generally do not. To the contrary, as explained previously, dress codes serve the important purpose of limiting distractions that could interfere with the learning process. Mr. Melton would have had no reason to believe that Livingston's dress code would violate the Plaintiffs' rights to free speech and the free exercise of religion.

While Plaintiffs contend that the dress code Mr. Melton drafted for Livingston Academy is unconstitutionally vague, it is strikingly similar to the one the Sixth Circuit upheld in *Blau*. Livingston's dress code prohibits clothing with sexual connotations, and the *Blau* dress code prohibited "clothing that promotes…sex." *Blau*, 401 F.3d at 387. Mr. Melton would have had no reason to believe this language was difficult to understand, but

---

[3] Plaintiffs have not demonstrated that Mr. Melton took any action that would amount to a constitutional violation with regard to Mr. Penkoski. While Plaintiffs aver that unnamed school system employees made negative comments toward and retaliated against Mr. Penkoski, they do not allege that Mr. Melton engaged in any of these actions.

if it were, note that the Plaintiffs do not allege that Mr. Melton immediately imposed discipline. Instead, he gave the Plaintiffs the chance to ask for clarification, to "deliberate" on their options, and to conform to his interpretation of the dress code. (Doc. No. 43 at ¶¶ 78, 80, 83). There is no reason Mr. Melton would have believed Livingston's dress code was unconstitutionally vague.

The Plaintiffs do not allege that Mr. Melton used the dress code as a proxy for viewpoint discrimination. Unlike the dress codes in *Tinker* and *Young*, *supra* at p. 13, the Livingston dress code had been in place for years and was not being applied selectively to squelch any particular viewpoint, and the Plaintiffs do not allege otherwise. To the extent that other students may have worn clothing out of compliance with the dress code, the Plaintiffs do not allege that Mr. Melton was aware of any such infractions and turned a blind eye. (Doc. No. 43 at ¶ 109).

Plaintiffs have not established that Mr. Melton exhibited any behavior that violated the Plaintiffs' constitutional rights or that he was aware or reasonably should have been aware that his actions on August 25, 2020 in enforcing school policy would amount to a constitutional violation. There is no plausible allegation that Mr. Melton falls among "the plainly incompetent or those who knowingly violate the law" such that this Court should deny him qualified immunity. *Malley*, 475 U.S. at 341 (1986).

### III.    Plaintiffs' Due Process Claim Should be Dismissed

While all of Plaintiffs' claims against the individually named Defendants should be dismissed for the reasons listed above, there is additional rationale for dismissing Plaintiffs' due process claim. "[T]he Supreme Court has repeatedly emphasized that substantive due

process is not to be used as a fallback constitutional provision when another provision or amendment (in this case, the First Amendment) directly addresses the subject." *Boroff*, 220 F.3d at 471. (*See, also*, *Conn v. Gabbert,* 526 U.S. 286, 293 (1999) ("We have held that where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.")(cleaned up)). As the First Amendment directly addresses Plaintiffs' allegations, their due process claim should be dismissed.

## CONCLUSION

Based upon the foregoing, the individual Defendants respectfully request that this Court dismiss all of Plaintiffs' claims against them and dismiss them as parties from this matter.

Respectfully submitted,

BENNETT & DECAMP, PLLC

BY:    /s/ *D. Scott Bennett*
D. SCOTT BENNETT – TNBPR: 015988
MARY C. DECAMP – TNBPR: 027182
*Attorneys for Defendant Richard Melton,*
*in his individual capacity and Defendant*
*Stephen Henson, in his individual capacity*
707 Georgia Avenue
Suite 300
Chattanooga, TN 37402
Telephone: (423) 498-3789

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

This the 3rd day of November, 2021.

BY: /s/ *D. Scott Bennett*
**D. SCOTT BENNETT – TNBPR: 015988**