UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| B. A. P., a minor child by and through ) <br> her parent, RICHARD PENKOSKI; ) <br> and RICHARD PENKOSKI, as the ) <br> parent and legal guardian of B. A. P., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> OVERTON COUNTY BOARD OF ) <br> EDUCATION, RICHARD MELTON, ) <br> and STEPHEN HENSON, ) <br> ) <br> Defendant. ) | Case No. 2:20-cv-65 <br> Judge Waverly Crenshaw, Jr. <br> Magistrate Alistair Newbern <br> JURY DEMAND |

## JOINT STATEMENT OF DISCOVERY DISPUTE

COME NOW the parties, through counsel, and submit this Joint Statement of Discovery Dispute.

## BACKGROUND FACTS OF LAWSUIT

Plaintiffs filed the underlying lawsuit in October 2020 alleging, among other things, that the defendants violated the First Amendment rights of Plaintiff Brielle Penkoski when she was a student at Livingston Academy, a school operated by Defendant Overton County Board of Education. (Doc. No. 43 at ¶ 62). They initially sued only Defendant Overton County Board of Education but later amended their complaint to add claims against Defendants Richard Melton and Stephen Henson. (Doc. Nos. 1, 43). During the relevant time period, Defendant Melton was the principal at Livingston Academy, and Defendant Henson was Brielle's first block teacher. (Doc. 90 at Ex. 1, p. 11, 26-27, 38). Livingston Academy has a student dress code. (Doc. No. 43 at ¶ 49). On August 25, 2020, Brielle wore a shirt to school that said "Homosexuality is a Sin. 1 Corinthians 6:9-10." (Doc. 90 at Ex. 1, p. 27-28; Doc. No. 43). While Brielle was in Mr. Henson's first block

class, Brielle was told to report to the principal's office. (Doc. 90 at Ex. 1, p. 35). When Brielle arrived at the office, Mr. Melton told her that her shirt violated the dress code. (Doc. 90 at Ex. 1, p. 40). Specifically, Mr. Melton told her that the dress code prohibited sexual connotations and that the word "sex" on her shirt amounted to a sexual connotation. (Doc. 90 at Ex. 1, p. 40). Upon being given the option by Mr. Melton of changing her shirt or going home, Brielle opted to go home. (Doc. 90 at Ex. 1, p. 52).

The crux of this Joint Discovery Dispute arises out of some of the topics listed in a 30(b)(6) Notice submitted by Plaintiffs to Defendant Overton County Board of Education and some document production issues.

In accordance with the applicable rule and in good faith efforts to resolve discovery disputes between them, the parties have conferred at various times, including multiple letters and emails, as follows:

> 5/30/2023 30(b)(6) Deposition Notice from Plaintiffs to Defendant Overton Co. BOE
> 5/31/2023 Letter from Ken Williams to Kristin Fecteau Mosher
> 6/12/2023 Letter from Ken Williams to Kristin Fecteau Mosher
> 6/15/2023 Letter from Kristin Fecteau Mosher to Ken Williams
> 6/16/2023 Letter from Ken Williams to Kristin Fecteau Mosher
> 6/19/2023 Letter from Kristin Fecteau Mosher to Ken Williams
> 6/22/2023 Letter from Ken Williams to Kristin Fecteau Mosher
> 6/26/2023 Letter from Kristin Fecteau Mosher to Ken Williams
> 6/28/2023 Letter from Ken Williams to Kristin Fecteau Mosher
> 7/3/2023 Letter from Kristin Fecteau Mosher to Ken Williams
> 7/5/2023 Letter from to Ken Williams to Kristin Fecteau Mosher
> 7/6/2023 Letter from to Ken Williams to Kristin Fecteau Mosher (revised incorporated issues)
> 7/6/2023  Telephonic Meet and Confer with all counsel

**I. PLAINTIFF'S ISSUES:**

ADDITIONAL FACTS AS NECESSARY BACKGROUND FOR DISCOVERY DISPUTE:

Defendant Stephen Henson had heard about the shirt before school started, and was upset

by the t-shirt and reported it to Defendant Principal Richard Melton. Defendant Melton told Defendant Henson to go to class, verify what the shirt said, and let him know. When first period Spanish class started, Mr. Henson observed Plaintiff wearing the shirt and sent a text message to Defendant Melton regarding what the shirt said. Defendant Melton texted him back and said he would "take care of it." Defendant Melton called the classroom phone, and Mr. Henson was told to send Plaintiff to his office. At Defendant Melton's office, Plaintiff was told she could either change her shirt, or cover it up, because it violated school dress code because the word "homosexuality" had a "sexual connotation" to it, which was not allowed under the school dress code. Plaintiff refused to change her shirt or cover it up, and she contacted her mother to come get her. Plaintiff's father, Richard Penkoski, called the school and spoke with Mr. Melton, who reiterated that Plaintiff could not wear the shirt because it had a sexual connotation. Mr. Melton then sent an email to Director of Schools Mark Winningham that he had asked Plaintiff Brielle Penkoski to either change her shirt or cover it up.

When Plaintiff arrived home with her mother, Plaintiff's father posted about the incident on his social media, stating that his daughter was "thrown out of school" for wearing her t-shirt and posted a picture of it. He also made posts alluding to the fact that Plaintiff's teacher was a homosexual. Defendant Henson was alerted to this social media post that evening, and sent a text to Defendant Melton that he felt the "harassment section" in the teacher handbook had him feeling that the student could "receive punishment up and including expulsion for harassing any of the protected classes under title 9 [sic] (which now includes lgbt people). I think we are getting to the point where this is level of harassment." The page from the teacher handbook on "Harassment" was attached to the text message. Defendant Melton had texted him to "screenshot everything" and that he "understood" that Defendant Henson felt harassed. Defendant Henson wrote a lengthy

3

email to Director of Schools Winningham later that same evening of the incident, reiterating and expounding on his belief that Plaintiff had "targeted" him, demeaned him, and he was protected "under Title IX."

Defendant Henson and his agents watched Richard Penkoski's social media and Henson would report that back from time to time including again on September 7, 2020.

**DISPUTE OVER ISSUES ON PLAINTIFF'S NOTICE OF 30(B)(6) DEPOSITION**

On May 30, 2023, Plaintiff requested a 30(b)(6) deposition from Defendant Overton Co. Board of Education and set it for June 20, 2023. Defendant objected to nearly every single category. The parties agreed to wait until after the depositions of Defendants Melton and Henson were taken, to see if some of the topics could be narrowed, eliminated or tailored after their testimony. The parties agreed that former Director of Schools Mark Winningham would be deposed on June 20 instead of Plaintiff taking the 30(b)(6). The Parties then agreed the 30(b)(6) deposition would be reset for July 28, 2023. During the deposition of Defendant Melton and Henson, Counsel for Overton County BOE objected several times, and reminded Plaintiff's counsel that "this is not a 30(b)(6) deposition" and Plaintiff acquiesced, stating that she was just trying to find out what information each witness had.

Post-depositions, Counsel for Plaintiff and Defendant began exchanging correspondence regarding the topics listed by Plaintiff on her Notice of 30(b)(6) deposition. Current issues that are unresolved:

1. 30(b)(6) TOPIC 1: <u>Reasons surrounding Winningham's departure</u> – Plaintiff has stated that she needs to find out why Mr. Winningham, who was Director of Overton County Board of Education at the time the incident occurred, was removed from his position. If Mr. Winningham was removed due to any reasons pertaining to Plaintiffs, it may be relevant to

this litigation. In their depositions, Plaintiff asked Defendant Melton and Defendant Winningham why he was removed from the position as Director of Schools, and both testified "did not know" and "no reason was given." Defendant has given Plaintiff a YouTube Video to review where the Board of Education met, and minutes of a meeting where the removal occurred, but Plaintiff is entitled to speak with someone under oath about this topic. If spoliation of evidence occurred due to Mr. Winningham's behavior or reasons surrounding his departure, reasons for his removal it may be relevant. Plaintiff does not agree that Defendant can provide evidence to review and remove Plaintiff's right to take a deposition about a topic.

2. 30(b)(6) TOPIC 2: Harassment Policy in Faculty/Employee Handbook – Teacher/Defendant Henson reported to Defendant/Principal Melton and Director of Schools Winningham that he felt "targeted" and threatened" by Plaintiff's t-shirt. It is important to Plaintiff's case to know how faculty are supposed to report harassment by students and how the Board of Education is supposed to handle it. To date, there is no testimony about it, other than Mr. Henson's report was considered "informal." The parties have exchanged lengthy explanations on both sides. Defendant has proposed to "stipulate" that portions of Mr. Melton's testimony will be testimony of the Board of Education. Counsel for Defendant has not stated what pages or portions of Mr. Melton's deposition he is referring to. However, Plaintiff is still entitled to take a deposition and ask Mr. Melton again about the official position of the Board of Education on this topic and just because Mr. Melton testified to it in his individual deposition does not preclude Plaintiff from taking her 30(b)(6) deposition on this topic. Relevant documents will cover BOE 152-156, Individual Defendants BATES #100

3. 30(b)(6) TOPIC 3: <u>Report of Plaintiff's shirt to Melton lodged by Henson</u> – on the day

5

of the incident, Mr. Henson first made an oral report to Mr. Melton, then the two Defendants exchanged text messages about it, and later, Defendant Henson wrote emails about Plaintiff's shirt to Defendant Melton and Director of Schools Winningham.

RELATED SPOLIATION ISSUE: the text messages between Defendant Melton and Henson have not been produced. Were Henson and Melton asked to preserve all their documentation? The lawsuit was filed a mere six weeks post-incident. Further, the Defendant Board did not produce emails from any witness or agent of the Board of Education. After the Complaint was Amended to bring in Defendants Henson and Melton, much more evidence was obtained from them, including their emails about the incident (including where they had copied Director of Schools Winningham and other Board members), and written statements of the facts the day of the incident. With Dr. Winningham's departure, did evidence get lost/destroyed or not preserved? Why did the Board not produce this vital evidence?

Other incomplete text messages from the date of the incident were exchanged between Richard Melton and Stephen Henson, including Mr. Melton telling Mr. Henson to "screenshot everything." The text string that came before it was not included, nor any further follow up response. At a minimum, the text string between Defendant Henson and Melton regarding the t-shirt would have proceeded the "screenshot everything" comment and ensuing comments.

Plaintiff is entitled to find out the official position on the investigation done by Defendant BOE regarding the report of Defendant Henson to Melton. Defendants have agreed to "stipulate" that portions of Mr. Melton's testimony will be testimony of the Board of Education. Counsel for Defendant has not stated what pages or portions of Mr. Melton's deposition he is referring to. However, Plaintiff is still entitled to take a deposition and ask

Mr. Melton again about the official position of the Board of Education on this topic and just because Mr. Melton testified to it in his individual deposition does not preclude Plaintiff from taking her 30(b)(6) deposition on this topic.

4. 30(b)(6) TOPIC 4: <u>Other violations of dress code that resulted in student having to change their clothes</u> - Mr. Melton specifically copied the Director of Schools on Plaintiff's dress code violation. Is this the only dress code violation ever reported to the Board of Education? Plaintiff clarified that she is seeking testimony from a representative to testify about other violations of dress code reported to the BOE/Director of Schools regarding any dress code violations where a student had to change their clothes. If there are none, Defendant may submit a stipulation on this topic. If there are, Plaintiff would request a representative on this topic to discuss what kind of violations reached the Director of Schools/Board of Education. Plaintiff has agreed to a five year look back prior to the incident in the Complaint.

5. 30(b)(6) TOPIC 5: <u>Any communication with members of Overton County School Board other than Livingston Academy staff regarding B.A.P.'s shirt and this lawsuit (not to include attorney/client privilege)</u> - The BOE did not provide any of Dr. Winningham's emails in discovery. Plaintiff received emails sent by Defendants to Dr. Winningham only after the Complaint was amended and they were provided from Defendants Henson and Melton. Thus, it was 18 months into litigation before Plaintiff found out these communications even existed. Defendant BOE needs to make a search of all emails of BOE members or their agents (including secretaries) regarding this incident with Plaintiff's shirt. In fact, Vickie Eldridge, Leslie Riddle, and Melissa Savage, Jeremy Laycock, and Vicky Phillips were copied on emails sent by Mr. Melton and Mr. Henson. Did any students complain?

Counsel for Defendant claimed it is "doubtful" that any Board member "kept a log or record of calls, emails and comments that might relate to this case" and if the Board did not preserve these critical documents, Plaintiff seeks testimony that the Board was requested to preserve these records and it did not, or that the Board actually made a search and there were none (under oath), or that the Board never did ask their agents to preserve these records.

6. 30(b)(6) TOPIC 6: – **RESOLVED at 7/6 conference**

7. 30(b)(6) TOPIC 7: <u>Henson's correspondence to Defendant on August 25, 2020 claiming "harassment" of him by B.A.P, and Defendant's investigation and/or response to Henson</u> – this topic relates to Topic #2 above. –Plaintiff is entitled to find out the official position on the investigation done by Defendant BOE regarding the report of Defendant Henson to Melton. Defendant's counsel wants to testify via letter that this was an "informal complaint" and the testimony of Defendant Melton and Henson is the "position" of the Board. Defendant BOE has agreed to "stipulate" that portions of Mr. Melton's testimony will be testimony of the Board of Education. Counsel for Defendant has not stated what pages or portions of Mr. Melton's deposition he is referring to. Defendant then asked Plaintiff to draft a stipulation. However, Plaintiff is still entitled to take a deposition and ask a witness, under oath, exactly what the Board of Education was told about Mr. Henson's complaints about Plaintiff "targeting" him. If the Defendant wants to present Mr. Melton again about the official position of the Board of Education on this topic, it must be done. Just because Defendant Melton and Defendant Henson testified about this matter in their individual depositions does not preclude Plaintiff from taking her 30(b)(6) deposition on this topic.

8

8. 30(b)(6) TOPIC 8: Dress code and enforcement of dress code – Defendant offered a stipulation on this topic but then refused to provide one, and then asked the Plaintiff to draft one. From Plaintiff's perspective, if Defendant is does not have a witness to testify about this topic, Defendant should put in writing what it is willing to stipulate to. This topic includes BOE BATES 173 as well as Livingston Academy's Dress Code.

9. 30(b)(6) TOPIC 9: Resolved

10. 30(b)(6) TOPIC 10: Resolved at 7/6 conference

11. 30(b)(6) TOPIC 11: Student handbook - Resolved

12. 30(b)(6) TOPIC 12: Employee Handbook – Policy 5.600 Staff Rights and Responsibilities is part of the topic here. But also Defendant Henson had referred to the "page 16-17 in the handbook" in his email to Winningham (Exhibit 29, 35 and 42) and the "Teacher Handbook" and attached it to his text to Melton (Joint Defendants BATES 100) it is unclear where that document came from. The BOE needs to provide a witness to testify about that policy in the "Handbook."

13. 30(b)(6) TOPICS 13 – 15: Resolved

14. 30(b)(6) TOPIC 16: Use of the word "sex" in classrooms – Plaintiff was told she could not wear her t-shirt because it contained a "sexual connotation" because "homosexuality" has the word "sex" in it. Plaintiff is entitled to get the official position from the Board of Education on what "sexual connotation" refers to and when the word "sex" is allowed in classrooms and on school grounds. Plaintiff will limit this inquiry to high school. Defendant has stated that concerning Plaintiff's shirt, "the testimony of Mr. Melton on this topic will be

9

the position of the School Board" and anything else is speculative. Unless the Defendant writes a stipulation, Plaintiff needs to depose someone on this topic and Defendant is welcome to present Mr. Melton again to testify.

15. 30(b)(6) TOPICS 17 – 21: Resolved

## II. DEFENDANT OVERTON COUNTY BOARD OF EDUCATION'S RULE 30(b)(6) DISCOVERY ISSUES

A.  Defendant School Board's Position On Other Spoliation: **Resolved 7/6/23 Stipulation**

B.  Dismissal of requests for declaratory relief. **Resolved by Stipulation to be filed.**

C.  School Board's Position on the Rule 30(b)(6) Issues.

On May 24, 2023 (corrected on May 30, 2023), plaintiffs submitted a F.R.Civ.P 30(b)(6) notice to depose a representative to speak for the Overton County Board of Education, containing 21 broad topics. The parties have spent more than a month in efforts to narrow and focus these categories, sufficient for the School Board to provide a proper response and designation. Although there have been a number of adjustments and acknowledgements, many of these categories remain unresolved.

Rule 30(b)(6) imposes dual obligations on the parties. A defendant is obligated to educate its witness(es) on the topics of the 30(b)(6) Notice. Given this responsibility, courts recognize that on a plaintiff's part, topics should have reasonable particularity; should be relevant and calculated to lead to the discovery of admissible evidence, especially a topic has no bearing on the existing claims or defenses in the case; should be proportional to the needs of the case, looking at the burden and cost of preparing a witness and whether it outweighs any minimal benefit; whether it is overbroad without reasonable limiting language; and whether the topic is cumulative, duplicative, or otherwise non-productive. See *Edwards v. Scripps Media, Inc., 331 F.R.D. 116, 117* (E.D. Mich. 2019). "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not. *Woods v. Std. Fire Ins. Co., 589 F. Supp. 3d 675, 684* (E.D. Ky. 2022).

Defendant has pointed out, in detail, its concerns with some of the topics in plaintiffs' Rule

30(b)(6) Corrected Notice, and have proposed what it sees as reasonable solutions, some of which have been accepted. As is permissible, the School Board has also clearly stated that, for certain topics involving unique knowledge of the school principal, his testimony will represent the testimony of the School Board. See *Edwards v. Scripps Media, Inc., Supra*. Given the impasse on the remaining topics, it is desirable to seek guidance and direction from the Court. See F.R.Civ.P. Rule 30(b)(6), 2020 Amendment, Committee Notes.

The issues between the parties track to the Corrected Notice of Rule 30(b)(6) Deposition by Item Number. The School Board sent a detailed letter on July 5, 2023 addressing all issues and party positions. After receiving plaintiffs' update through the Joint Statement and conferring with all parties, that same letter format was used, but is dated July 6, 2023 and has added the School Board's latest comments. This July 6, 2023 letter is attached as Exhibit "1" to the Joint Statement, constitutes the School Board position in the Rule 30(b)(6) issues, and is incorporated herein by reference. Those Items are:

> Item 1: Reasons surrounding Dr. Winningham's departure
> Item 2: Harassment Policy in Faculty/Employee Handbook
> Item 3: Report of Plaintiff's shirt to Melton lodged by Henson
> Item 4: Other violations of dress code that resulted in student having to change their clothes
> Item 5: Any communication with members of Overton County School Board other than Livingston Academy staff regarding B.A.P.'s shirt and this lawsuit (not to include attorney/client privilege)
> Item 6: RESOLVED BY STIPULATION OF 7/6/23
> Item 7: Henson's correspondence on August 25, 2020 claiming "harassment" of him by B.A.P., and Defendant's investigation and/or response to Henson – See response to #3
> Item 8: Dress code and enforcement of dress code
> Item 10: Defendant's anti-bullying/cyberbullying policy
> Item 11: Student handbook (NEW: no heading) – RESOLVED, Board will prepare witness on topic
> Item 12: Employee Handbook
> Item 16: Use of the word "sex" in classrooms
> Plaintiffs have agreed to Drop: 30(b)(6) Notice Items 9, 13-15, 17-21

D.  <u>Corrected Rule 30(b)(6) Notice of Deposition</u>.  Because evaluation of the Corrected Rule 30(b)(6) Notice of Deposition is at issue, a copy is attached as <u>Exhibit "2"</u>.

By their signatures affixed hereto, counsel for each party hereby certifies that good faith efforts have been made to resolve and narrow the discovery disputes in issue, but without success as to those issues above.

Respectfully submitted this the 6th day of July, 2023.

/s/ Kristin Mosher
Kristin Fecteau Mosher, #19772
The Law Office of Kristin Fecteau
5543 Edmonson Pike
Nashville, TN 37211
(615) 496-5747
Kristin@fecteaulaw.com

/s/ Rick Nelson
David J. Markese
Frederick H. Nelson
American Liberties Institute
P. O. Box 547503
Orlando, FL 32854-7503
*Attorneys for Plaintiffs*

/s/ Kenneth S. Williams
Kenneth S. Williams (#010678)
**Wimberly Lawson**
**Wright Daves & Jones, PLLC**
P.O. Box 655
1420 Neal Street, Suite 201
Cookeville, TN 38503-0655
Telephone (931) 372-9123
kwilliams@wimberlylawson.com
*Attorney for Defendant*
*Overton County Board of Education*

13

                                                 */s/ Mary DeCamp*
                                                 Scott Bennett #15988)
                                                 Mary C. DeCamp (#27182)
                                                 Bennett & DeCamp
                                                 735 Broad Street, Suite 214
                                                 Chattanooga, TN 37402
                                                 *Attorneys for Defendants*
                                                 *Richard Nelson and Stephen Henson*